UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KEELY SPADA ROTUNNO,**<br>    **Plaintiff,** | 3:12cv1352 (WWE) |
| v. | |
| **TOWN OF STRATFORD,**<br>    **Defendant.** | |

## RULING ON DEFENDANT'S MOTION TO DISMISS

In this action, plaintiff Keely Spada Rotunno, a former dispatcher for police, fire and emergency medical services ("EMS"), alleges that defendant Town of Stratford is liable for violation of her First Amendment right to free speech, violation of the Connecticut General Statutes § 31-51q, and wrongful termination.

Defendant has filed a motion to dismiss. Upon review, the motion to dismiss will be granted in part and denied in part.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court considers the allegations of the complaint to be true.

Plaintiff commenced work for defendant as a civilian 911 emergency dispatcher on May 7, 1996. Plaintiff's employment was governed by a collective bargaining agreement that provided for termination for "just cause." Plaintiff served as a union steward and on the bargaining unit of the Union local.

Due to the staff shortages, plaintiff worked an average of seventy to eighty hours per week. The Town's dispatchers had no formal training and no supervisor.

In December 2006, plaintiff received a written reprimand from her supervisor for

1

failure to follow proper protocol.

On April 16, 2008, plaintiff signed a "Last Chance Agreement" in lieu of termination for alleged insubordination.

In October 2010, a junior dispatcher filed a written complaint about plaintiff's acts of harassment. This complaint could not be substantiated and plaintiff was not disciplined.

In December 2010, Deputy Fire Chief Curtis Maffett interviewed plaintiff regarding three civilian complaints related to her alleged unprofessional handling of calls. Fire Chief James Cavanaugh issued a memorandum, stating that plaintiff had justified some of her conduct, that she had addressed some areas of dispatch that needed to be addressed but that she had not justified her "negative attitude and actions."

In her role as a union steward during negotiations with the Town, plaintiff requested that a supervisor be retained for dispatchers. The Town did not agree to retention of a supervisor.

Plaintiff notified various Town officials on numerous occasions that public safety was endangered by the lack of adequate staff and the inferior set-up of the office.

Due to complaints by co-workers, Robert Ing, Director of Human Resources, made another investigation into plaintiff's conduct. Prior to completion of the investigation, Ing commented to other staff members that he was "probably going to terminate" plaintiff.

On February 25, 2011, plaintiff's employment was terminated, allegedly for violation of a Last Chance Agreement, insubordination, harassment of a co-employee, and unprofessionalism.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

First Amendment Retaliation

Plaintiff asserts that defendant retaliated against her for exercise of her First Amendment right. Specifically, plaintiff alleges that she was terminated in retribution for having repeatedly discussed and exposed the Town's wrongful actions in overseeing and maintaining its dispatch operations.

Defendant argues that this claim should be dismissed because plaintiff cannot establish that her speech is entitled to First Amendment protection or that any civil rights violation resulted from a municipal custom or policy. See Monell v. Dept. of Soc.

3

Servs., 436 U.S. 658, 690 (1978).

Plaintiff must establish that: (1) her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against her; and (3) there was a causal connection between this adverse action and the protected speech. Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

To receive First Amendment protection, an employee must speak "as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Thus, the Court must consider two separate inquiries: (1) whether the subject of the speech at issue constitutes a matter of public concern; and (2) whether the employee spoke as a "citizen" rather than as an employee. Ricciuti v. Gyzenis, 832 F. Supp. 2d 147, 154 (D. Conn. 2011).

Whether speech touches upon a matter of public concern is a question of law that should be answered after examination of the content, form and context of a given statement after examination of the whole record. Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011). To constitute speech on a matter of public concern an employee's expression must "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Speech that touches upon a matter of general importance but that concerns an issue that is "personal in nature and generally related to [plaintiff's] own situation," such as his assignments, promotion, or salary, does not address matters of public concern. Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991). The government could not function if every employment decision became a constitutional matter. Garcetti, 547 U.S. at 419.

4

A topic is a matter of public concern for First Amendment purposes if it is "of legitimate news interest" or of value and concern to the public at the time of the speech. City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004). The question is whether the matter is of public concern not whether the speech was also made to serve some private interest. Nagle v. Marron, 663 F.3d 100, 107 (2d Cir. 2011). However, the fact that a public employee's comments may be construed broadly to implicate matters of public concern does not create speech on matters of public concern. Adams v. Ellis, 2012 WL 693568, *10 (S.D.N.Y. 2012). A speaker's motive may be relevant, but it is not dispositive to the matter of whether it related to a matter of public concern. Rueland v. Hynes, 460 F.3d 409, 417-18 (2d Cir. 2006).

Construing the allegations most liberally for the plaintiff, the Court finds that plaintiff's speech relevant to understaffing and the ability of the Town dispatchers to respond to public emergency calls implicates public safety and thereby touches upon a matter of public concern.

Thus, the Court must turn to consider whether plaintiff spoke as an employee or a citizen. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti. 547 U.S. at 421. Speech made as an employee must have been "in furtherance of one of" the employee's "core duties" and is "part-and-parcel" of an employee's ability to execute her duties. Weintraub v. Bd. of Educ., 489 F. Supp. 2d 209, 220-203 (E.D.N.Y. 2007). Weintraub elaborated that the speech must have "no relevant analogue to citizen speech, which encompasses letters to newspapers,

conversations with co-workers, complaints to elected representatives or state agency such as an Inspector General. Id. at 198-204. By contrast, a non-public speech made in the context of a union grievance dispute would not be considered citizen speech. See Ricciuti, 832 F. Supp. 2d at 157.

In this instance, the Court cannot fully assess the context, content and form of plaintiff's speech on the basis of factual allegations. The Court would benefit from a fuller review of the factual record to determine whether she made her speech as a citizen or a public employee.

Further, the Court disagrees that the complaint lacks allegations setting forth a plausible claim of municipal liability. To hold a municipality liable for civil rights violations, plaintiff must establish that his injury resulted from an official policy or custom perpetuated by supervisory officials of the municipality, rather than employees at the non-policy making level. Ricciuti v. New York Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991). In the absence of an express policy or custom, plaintiff must show that the action that caused the constitutional violation was the result of a policy decision made by a municipal policymaker with final policymaking authority. Zherka v. DiFiore, 412 Fed. Appx. 348 (2d Cir. 2011).

Here, plaintiff's complaint may be construed to allege that Ing, as Director of Human Resources, made the decision to terminate plaintiff and that he is a policy maker or delegated policy maker for the Town. Accordingly, the Court will not dismiss count one on a motion to dismiss.

**B.** **State Law Claims**

1.   Retaliation Pursuant to Connecticut General Statutes § 31-51q

Plaintiff's allegations in support of her state law claim pursuant to Section 31-51q mirror that of First Amendment retaliation claim.

Section 31-51q provides that:

Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge . . . .

To make out a prima facie case, plaintiff "must show that (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." Lynch v. Ackley, 2012 WL 6553649, *8 (D. Conn. 2012). Defendants argue that plaintiff has not alleged that her speech touched upon a matter of public concern. For the reasons discussed relevant to the First Amendment retaliation claim, the Court requires review of the full record to determine whether plaintiff's speech is protected. Because the Court does not have the full record before it on this motion, the Court will deny the motion to dismiss on this claim.

2.   Wrongful Discharge

Defendant argues that plaintiff's wrongful discharge claim should be dismissed because her employment is subject to a collective bargaining agreement. Plaintiff

7

counters that she claims wrongful retaliatory discharge, which may not be covered by the collective bargaining agreement.

A common law wrongful discharge claim may be brought by an at-will employee where the discharge violates public policy and that plaintiff has no other available means of redress. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-475 (1980). However, Section 301 of the Labor Management Relations Act ("LMRA") preempts state law claims to the extent that resolution of those claims "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). However, where the state law claim does not require interpretation of the collective bargaining agreement, LMRA preemption does not apply. Bimler v. Stop & Shop Supermarket Co., 965 F. Supp. 292, 300 (D. Conn. 1997). Plaintiff maintains that her claim of retaliatory discharge does not require interpretation of the collective bargaining agreement.

Plaintiff cannot bring her wrongful discharge claim for two reasons. First, her employment is subject to a just cause provision of a collective bargaining agreement, and therefore, she is not an at-will employee who can assert a common law wrongful discharge claim. Tomlinson v. Board of Educ., 226 Conn. 704, 730 n.18 (1993).

Second, plaintiff asserts that her wrongful discharge claim is brought under a theory of retaliatory discharge. A state or federal statutory remedy such as that provided by Section 31-51q of the Connecticut General Statutes precludes a common

8

law claim for wrongful discharge in violation of public policy.  Varley v. Regional School Dist. No. 4, 2012 WL 593627, *5 (Ct. Super. Nov. 8, 2012).  The motion to dismiss will be granted on this claim of wrongful discharge.

### Punitive Damages

Defendant asserts that the request for punitive damages on the claims against the Town should be dismissed.  Plaintiff poses no objection, and the Court finds that it is proper to dismiss such claim for punitive damages.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (punitive damages not available against municipalities on Section 1983 claims); City of Hartford v. Int'l Ass'n of Firefighters, Local 760, 49 Conn. App. 805, 266 (1998) (punitive damages should not be awarded against municipality on state law claims).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss [doc. #7] is GRANTED as to the wrongful discharge and punitive damages claims and DENIED as to the remaining claims.

Within fifteen days of this ruling's filing date, plaintiff is instructed to file an amended complaint that reflects this Court's dismissal of the wrongful discharge and punitive damages claims.

                                                   /s/_____
                                                 Warren W. Eginton
                                                 Senior U.S. District Judge

Dated at Bridgeport, Connecticut this 13th day of May 2013.