UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**KEELY SPADA ROTUNNO,**       :       3:12cv1352 (WWE)
    Plaintiff,                     :
                                   :
**v.**                             :
                                   :
**TOWN OF STRATFORD,**             :
    Defendant.                     :

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Keely Spada Rotunno, a former dispatcher for police, fire and emergency medical services ("EMS"), alleges that defendant Town of Stratford is liable for violation of her First Amendment right to free speech and violation of the Connecticut General Statutes § 31-51q.

Defendant has filed a motion for summary judgment. For the following reasons, the motion for summary judgment will be GRANTED.

## BACKGROUND

The parties have submitted statements of fact with supporting exhibits attached. According to the statements of fact and the pleadings, the following facts are not in dispute.

Plaintiff commenced work for defendant as a civilian 911 emergency dispatcher on May 7, 1996. Plaintiff's employment was governed by a collective bargaining agreement that provided for termination for "just cause." On February 25, 2011, she was terminated by Human Resources Director Ronald Ing.

Prior to her termination, plaintiff was a senior dispatcher and served as a union steward; she was on the bargaining unit of the Union for dispatchers. Until 2007, Brian

1

Lindwall-Thomas was the Dispatch Supervisor.  However, after his departure, a Dispatch Supervisor was not hired until 2012 due to certain arbitration with the supervisors' union.  During plaintiff's tenure, the Dispatch Center suffered from an understaffing of dispatchers.  The understaffing necessitated that overtime be performed by the existing dispatchers.

Plaintiff complained to various individuals that the Dispatch Center was inadequately staffed.  However, she did not communicate her complaints in public meetings or to the media.

In a letter dated April 25, 2000, Chief Mossman informed plaintiff that she was suspended for insubordination and unprofessional and hostile behavior.  The letter outlined that plaintiff had been the subject of co-worker complaints, that she had made derogatory comments to and about other dispatchers, and that she had confronted Chief Mossman in an "angry demeanor," requiring that she be ordered out of the building and instructed to follow the proper chain of command when lodging complaints.  A memo dated June 9, 2006 requested plaintiff to indicate in writing any concerns about dispatch systems; it directed her to submit in writing her concerns to Lindwall-Thomas by June 13, 2006.

In a memorandum of discipline dated June 26, 2006, Lindwall-Thomas reprimanded plaintiff for acts of insubordination and complaints of hostile behavior from Dispatch Center staff; he also cited her disruptive behavior during a press conference held by the Mayor of Stratford to show the media the new Dispatch Center.

In a memorandum of discipline dated December 12, 2006, Lindwall-Thomas wrote that plaintiff was suspended for acts of insubordination, disruptive and hostile

behavior towards Dispatch Center staff and for failure to follow proper protocol when dispatching calls.

In August 2007, plaintiff received a copy of portions of the Town's Administrative Policy Manual that outlines the levels of discipline and what may considered unacceptable or inappropriate behavior.

In a memorandum of decision dated February 1, 2008, plaintiff was cited for acts of insubordination and hostile behavior that caused a hostile environment in the Dispatch Center. The memorandum recommended that plaintiff seek assistance from the Employee Assistance Program.

In April 2008, plaintiff and defendant entered into a Last Chance Agreement, which stated that further acts of insubordination or negative or insulting conduct could be cause for termination at defendant's discretion. Thereafter, Chief Cybart suspended plaintiff for three days at the end of April 2008; he informed her that he had found her conduct during telephone conversation with an EMS Director to be rude and unacceptable.

On December 20, 2010, a hearing was held regarding civilian complaints against plaintiff for unprofessional behavior. A Memorandum of Discipline informed plaintiff that she had received a written warning in response to the civilian complaints. It indicated that continued behavior problems could result in discipline including dismissal. In his deposition, Ing stated that the Union had requested leniency on plaintiff's behalf.

In January 2011, plaintiff got into an argument with a co-worker, Laura Fee. Ms. Fee subsequently filed a complaint against plaintiff. On February 25, 2011, plaintiff met with her Union Representative Ron Suraci, Ing and Fire Chief Cavanaugh. On

3

February 25, 2011, plaintiff was terminated from her position as a Civilian Dispatcher; the termination letter stated that the termination was due to violation of the Last Chance Agreement, insubordination, harassment of a co-employee and unprofessional behavior.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

First Amendment Retaliation

Plaintiff asserts that defendant retaliated against her for exercise of her First Amendment right in violation of 42 U.S.C. § 1983 and Connecticut General Statutes § 31-51q.[1]  Specifically, plaintiff alleges that she was terminated in retribution for having repeatedly complained to individuals within the Town that public safety was endangered by the lack of adequate staff and the inferior set up of the office.

Defendant argues that plaintiff cannot establish that her speech is entitled to First Amendment protection.

Plaintiff must establish that: (1) her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against her; and (3) there was a causal connection between this adverse action and the protected speech.  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

To receive First Amendment protection, an employee must speak "as a citizen on a matter of public concern."  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).   Thus, the Court must consider two separate inquiries: (1) whether the subject of the speech at issue constitutes a matter of public concern; and (2) whether the employee spoke as a "citizen" rather than as an employee.  Ricciuti v. Gyzenis, 832 F. Supp. 2d 147, 154 (D. Conn. 2011).  Defendant asserts that plaintiff voiced her complaints in her capacity as

---

[1]Section 31-51q prohibits the relatiatory discharge of employees who invoke "constitutionally guaranteed free speech rights that, in turn, protect states that address a matter of public concern."  Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 776 (1999). A section 31-51q claim is generally considered pursuant to federal First Amendment retaliation law. Konspore v. Friends of Animals, Inc., 2012 WL 965527, *15 (D. Conn. 2012). See Bracey v. Bd. of Educ. of City of Bridgeport, 368 F.3d 108 (2d Cir. 2004).

an employee rather than as citizen.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti. 547 U.S. at 421.  Speech made as an employee must have been "in furtherance of one of" the employee's "core duties" and is "part-and-parcel" of an employee's ability to execute her duties.  Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010). Speech that occurs at work or that is communicated to a superior may be less likely to protected, but the controlling factor is whether the employee is speaking pursuant to his or her duties.  Garcetti, 547 U.S. at 421. By contrast, a non-public speech made in the context of a union grievance dispute would not be considered citizen speech.  See Ricciuti, 832 F. Supp. 2d at 157.

There is no bright line rule to determine whether an employee is speaking pursuant to his or her official duties; courts must examine the nature of the job responsibilities, the nature of the speech, and the relationship between the two.  Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012).  However, "when a public employee whose duties to not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee." Matthews v. City of New York, 779 F.3d 167, 174 (2d Cir. 2015).

In this instance, plaintiff did not comply with the instructions to file a written complaint within the chain of command, but she did limit her complaints to individuals

involved with the Dispatch Center.  Her complaints to the chiefs of the police and fire department could be considered to have a civilian analogue but the subject of the complaints—inadequate staffing and supervision—are employment concerns that are directed at a dispatcher's working capacity to respond to emergency calls. As an employee dispatcher, plaintiff would be expected to report conditions that interfered with her ability to perform her job duties. Thus, the Court finds that plaintiff spoke as a public employee about her job duties.  Such speech does not fall within First Amendment protection, and the Court will enter summary judgment in defendant's favor on this ground.

Further, even assuming that plaintiff's speech could be considered protected, summary judgment is appropriate because defendant would have taken the same adverse action in the absence of the protected speech.

Under the Mount Healthy defense, defendant may prove by a preponderance of the evidence that it would have reached the same decision even in the absence of protected conduct.  Mt. Health City School District Bd. of Ed. v. Doyle, 429 U.S. 274, 286 (1977).  In this instance, plaintiff had an extensive record of discipline that resulted in the Last Chance Agreement and her termination.  Although some of the complained of insubordination concerned her speech due to lack of staffing and supervision, she was also the subject of civilian and co-worker complaints of unprofessional and hostile behavior.  Defendant had a legitimate, non-retaliatory reason for plaintiff's termination based on the complaint filed by her co-worker Fee concerning a hostile argument in the work place and the complaints filed against her that occurred after the Last Chance Agreement.

Plaintiff has not adduced evidence that gives rise to an inference of retaliatory animus. Plaintiff maintains that she was treated differently than her co-workers. Evidence of differential treatment can support a claim of First Amendment retaliation but plaintiff must demonstrate that these comparators are similarly situated in all material respects. Monz v. Rocky Point First Dist., 853 F. Supp. 2d 277, 289 (E.D.N.Y. 2012); Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997). Plaintiff points out that Fee only received a written warning as discipline for the altercation with plaintiff, and that two unnamed police officers also received written warnings after a complaint that also involved plaintiff. However, plaintiff has not shown that these individuals had analogous disciplinary records with civilian and co-worker complaints that had merited discipline. Accordingly, summary judgment will enter in defendant's favor.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. #38] is GRANTED. The clerk is instructed to close this case.


_____/s/_____
Warren W. Eginton
Senior U.S. District Judge


Dated at Bridgeport, Connecticut this _17th___ day of July 2015.